IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re

STAT AMBULANCE SERVICE, INC.                    Chapter 11

Debtor in Possession                             Case No. 07-20071


FINDINGS OF FACT AND CONCLUSIONS OF LAW REQUIRING AN
OBJECTIVE REINSPECTION OF THE DEBTOR BY THE SECRETARY OF
THE WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN SERVICES
WITHIN 45 DAYS

Pending before the Court is the motion of The Office of Emergency Services of the West Virginia Department of Health and Human Services ("DHHR") to lift the automatic stay in this Chapter 11 proceeding. On September 9, 2009, the DHHR, in its capacity as a creditor, filed the Motion to Lift the Automatic Stay, seeking to revoke the licensing authority of the Debtor, Stat Ambulance Service, Inc., based upon alleged deficiencies cited at an inspection which took place on August 18, 2009 and a follow-up inspection which took place on October 13, 2009. On September 23, 2009, Stat Ambulance filed a Response to the DHHR's Motion to Lift the Automatic Stay, disputing the alleged deficiencies. On March 4, 2010, this Court held an evidentiary hearing in regard to the DHHR's Motion to Lift Stay and heard testimony of representatives from Stat Ambulance and the DHHR.

## FINDINGS OF FACT

1) Stat Ambulance is an ambulance service provider that provides emergency and on-emergency medical service to the citizens of Wyoming, Mingo, McDowell and Mercer Counties, and currently employs approximately 65 individuals.

2) The Office of Emergency Services of the West Virginia Department of Health and Human Services ("DHHR") is responsible for overseeing the regulation of ambulance service throughout the State of West Virginia, but filed the motion at issue as a creditor party in interest. On February 6, 2007, the DHHR Bureau for Medical Services filed its proof of claim and supporting documentation in the amount of $179,910.25 for overpayments made to the Debtor for Medicaid reimbursed services. This proof of claim was amended on September 30, 2009 to reflect the amount owed as $171,653.18. Additionally, on February 26, 2007, the DHHR Bureau for Public Health Office of Emergency Medical Services filed its proof of claim and supporting documentation in the amount of $6,700.00 for past due licensure and vehicle fees. On March 19, 2007, the Debtor filed a motion to pay this claim and on May 4, 2007, an order was entered permitting the payment of $6,700.00.

3) The licensure of emergency medical service is governed by West Virginia CSR § 64-48-1 *et seq*.

4) The DHHR has also developed a manual, which sets forth the requirements and standards that ambulance service providers must meet in order to operate in the State of West Virginia

5) On August 18, 2009, the DHHR inspected Stat Ambulance and issued a report of its findings, containing several alleged deficiencies mainly relating to record keeping issues

6) This report also included some recommendations for improvement.

7) Less than sixty days later, on October 13, 2009, DHHR performed a follow up inspection, which included the same inspector from the first inspection, as well as two individuals from the DHHR who are not inspectors

8) Subsequently, the DHHR issued a report of its findings from the October inspection.

9) Pursuant to the applicable regulations, the inspection differentiates between Requirements and Standards. While entities receive points under the degree to which they comply with a Standard, Requirements must fully be met in order to receive a license to provide emergency medical service.

10) Curtis Thomas, agency licensing coordinator, testified on behalf of the DHHR at the March 4, 2010 hearing.

11) While the DHHR acknowledged in the October inspection report that Stat Ambulance met all of the nine Requirements that have to be met to be able to have a license as of the October Inspection, it noted some alleged deficiencies relating to the Standards.

12) The alleged deficiencies cited by the DHHR are contrary to Stat Ambulance's prior inspections in 2005 and 2007, wherein it received superior ratings.

13) For example, on Standard 2 relating to medical accountability and oversight, the DHHR scored Stat Ambulance a 0 out of 22, even though on past

3

inspections Stat Ambulance received at least 20 points in this category.

14)　DHHR deducted all points from Standard 2 relating to the medical director, even though it was informed that the Stat Ambulance had just hired a new director because the prior director had been ill.

15)　Moreover, zero points were awarded for Stat Ambulance's medical director, even though he is the chief of staff of Williamson Memorial Emergency Room and comes into contact with the Stat Ambulance Crews on a daily basis.

16)　The DHHR inspector admitted that he was currently unaware as to the medical director's current involvement with Stat Ambulance.

17)　In reviewing the inspection reports, the DHHR also deducted points for alleged policy violations that are not written in the standards.

18)　For example, DHHR deducted points for Stat Ambulance not offering enough classes under Standard 8, but DHHR's inspector admitted that the rules and regulations do not state how many classes must be offered.

19)　In regard to Standard 2, DHHR testified that points were deducted in regard to the amount of reviews of the ambulance runs that Stat Ambulance completed. The DHHR claims that ten percent of the runs must be reviewed.

20)　However, the requirement to review ten percent of ambulance runs is not in writing in the standards.

21)　Jeff Green, who is a paramedic and Stat Ambulance's quality training officer and supply distribution manager, testified on behalf of Stat Ambulance at the March 4, 2009 hearing. He was hired in October 2009 by Stat Ambulance to address some of the alleged deficiencies.

22) In regard to addressing alleged deficiencies under Standard 8, Stat Ambulance testified that it has implemented a new training program for its employees and the community, which includes a year's worth of classes that have already been scheduled.

23) To address Standard 10, Stat Ambulance further testified that it has implemented a new inventory system to regulate supplies.

24) To address Standard 2, Stat Ambulance also testified that it has developed a new system to monitor employee schedules and patient runs.

25) To address Standard 11, Stat Ambulance testified that its management recently participated in management training conducted by the Office of Emergency Services.

26) In regard to correcting deficiencies, the DHHR testified that "it has been our practice that we give 60-90 days to correct the deficiencies," but the inspector further admitted that the correction time period is not listed anywhere in writing.

27) In this instance, Stat Ambulance was given less than 60 days for correction from the first inspection in August until the re-inspection in October.

28) Moreover, Stat Ambulance was not provided with a time period of correction after the October inspection, even though the inspection report provided for recommendations of correction.

29) The DHHR claims to have a contingency plan in place for the area should Stat Ambulance's license be revoked, however, the DHHR did not share such a plan with the Court and their inspector testified that he has not seen a contingency plan. The Debtor's services are of vital importance to residents of Wyoming, Mingo, and

McDowell Counties. The County Commission of Mingo County has asserted its support of the turnaround efforts of the Debtor for this reason.

30) The Inspector, Curtis Thomas, testified that he had no idea as whether or not Stat Ambulance was currently in compliance with DHHR regulations.

31) At a scheduling conference conducted by the Court in August, 2009, where the Debtor had objected to the findings in the original inspection of the DHHR, it was agreed that, because of the objections of the Debtor, the above referenced reinspection would occur. While the reinspection period was scheduled and agreed to be held by the parties within 60 days of the original inspection, it was with the implicit understanding that because of the objections the debtor had raised as to the objectivity of the earlier inspection, that the subsequent inspection would be objective and conducted impartially.

32) At the final hearing on the motion to lift the automatic stay the DHHR sought the authority to immediately revoke the license of the Debtor and the DHHR did not recognize any state law right to appeal under the relevant regulations.

33) All of the determinations made by the examination team in the second inspection were made by the same individual who conducted the first, Mr. Curtis Thomas, and that individual showed, in his testimony before the Court obvious bias, if not open hostility, toward the Debtor's principals. The Court finds that the manner in which the reinspection was conducted was prejudicial and inconsistent with the implicit representations of counsel for DHHR in agreeing to the reinspection.

## CONCLUSIONS OF LAW

1) The automatic stay is one of the most fundamental protections provided to a debtor under the Bankruptcy Code. See *Midatlantic Nat. Bank v. New Jersey Dept. of Envtl. Prot.*, 474 U.S. 494, 503 (1986).

2) Based on the evidence received by this Court, the DHHR as a creditor has failed to establish that the stay should be lifted.

3) Several of the deficiencies alleged by the DHHR are based on alleged internal policies that are not in writing or available for review or inspection by the public and thus do not provide notice to the ambulance service provider as to what is actually required of them.

4) In conducting the inspection, the inspector assigned by DHHR acted arbitrarily and capriciously and misapplied the Standards by basing its scoring on unwritten policies.

5) Moreover, Stat Ambulance was not afforded any opportunity after the October Inspection to comply with any of the recommendations made in the October report.

6) To permit the lifting of the automatic stay would result in the termination of Stat Ambulance's operation as an emergency service provider to an under-served area, cause substantial prejudice to the Stat Ambulance's estate, and improperly interfere with Stat Ambulance's proposed Plan of Reorganization, the administration of the bankruptcy case, and the payment of creditor claims.

7) The Debtor's bankruptcy estate has an interest in the fair and non-prejudicial regulation of the Debtor's business operations.

8) The DHHR has failed to demonstrate that maintaining the automatic stay outweighs the hardship to Stat Ambulance and its creditors or the hardship to the community in terminating this service.

9) In fact, Stat Ambulance has been operating during the entire pendency of the bankruptcy and the DHHR has failed to establish that any of the alleged deficiencies have affected the quality of care or safety of the patients.

## FINAL JUDGMENT

Now therefore, based on the foregoing, the Court ADJUDGES, ORDERS and DECREES as follows:

    a. The DHHR has failed to establish the cause necessary to lift the automatic stay at this time;

    b. The Motion to Lift Stay is hereby denied;

    c. Nevertheless, the Court is mindful that this creditor, DHHR, is a creditor with both financial claims and regulatory authority over the debtor. Accordingly, the Court believes it is necessary to protect the public interest to require a third examination. Said examination should be in light of the substantial interests of creditors in the case and the substantial interests of the citizens in the 4 county region where the Debtor provides services and must be completely objective. It is therefore suggested that this examination occur by persons independent of the examiner the Court has found to be hostile in this case. Further, this examination should occur within 45 to 60 days of this

order and the report should be filed under seal with the Court. A status conference with all parties in interest in this case shall be conducted promptly thereafter.

        d.      The Clerk of the Court is hereby directed to serve a true copy of this order on the Secretary of the DHHR and each party of record by placing the same into the United States mails.

**IT IS SO ORDERED**

Entered this __26__ day of April 2010.

_____
The Honorable Ronald Pearson
Bankruptcy Judge